

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:19-CR-27-TSE |
| ELIAZAR DURAN MOTA, ) | |
| a/k/a JONATHAN, ) | |
| a/k/a CALCETIN ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Count One of the Information and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

1. Between in and around August 28, 2015 through on or about July 6, 2018, within the Eastern District of Virginia and elsewhere, in and affecting interstate commerce, the defendant, ELIAZAR DURAN MOTA, a/k/a JONATHAN a/k/a CALCETIN, with others known and unknown to the United States, knowingly traveled in interstate commerce and used a facility in interstate commerce, including cell phones, with intent to otherwise promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of prostitution offenses in violation of the laws of Virginia, to wit: Virginia Code § 18.2-348, and of the United States, in violation of Title 18, United States Code, Section 2421(a), and thereafter performed and attempted to perform an act to promote, manage, establish and carry on such unlawful prostitution activity involving victims Ca.D.S., Cl.D.S., A.M.F., J.P.A., and M.V.O. (In violation of Title 18, United States Code, Sections 1952(a)(3) and 2.)

2. ELIAZAR DURAN MOTA, along with Luis Bonilla-Hernandez, operated a prostitution business out of their residences located in Northern Virginia.

1

3. The prostitution business run by DURAN MOTA and Bonilla-Hernandez catered largely to Hispanic commercial sex customers. The females being prostituted were referred to as "Treinteras," a term derived from the Spanish word for thirty (treinta).

4. DURAN MOTA and Bonilla-Hernandez communicated with multiple females over their cell phones to set up weekly appointments for the women to work in prostitution in Northern Virginia.

5. A single female worked a week at a time under DURAN MOTA and Bonilla-Hernandez.

6. The females, including Ca.D.S., Cl.D.S., M.V.O., A.M.F., and J.P.A., traveled individually during separate weeks via bus to Washington, D.C. The females traveled to Washington, D.C. from states such as Pennsylvania and New York.

7. After each female arrived via bus in Washington, D.C. for their scheduled week, DURAN MOTA and Bonilla-Hernandez alternated picking the female up via car. After picking up the female, DURAN MOTA and Bonilla-Hernandez drove the female from Washington, D.C. to Northern Virginia for purposes of prostitution.

8. Each female stayed at the residence of DURAN MOTA or Bonilla-Hernandez for a week at a time. Each female worked Monday through Saturday. On Sunday, a new female would be obtained by DURAN MOTA and Bonilla-Hernandez for purposes of prostitution. The new female would then work Monday through Saturday in prostitution.

9. DURAN MOTA and Bonilla-Hernandez obtained commercial sex customers for the females through disguised business cards purportedly advertising automotive services and through word of mouth. Bonilla-Hernandez provided his cell phone number of 571-525-8903 on some of the business cards. Customers called the number on the business cards to set up

prostitution dates. Bonilla-Hernandez and DURAN MOTA worked together to set up commercial sex dates over their cell phones with paying customers.

10. After the prostitution dates were set up via cell phone, DURAN MOTA and Bonilla-Hernandez alternated driving each female to the customers' homes and businesses for purposes of prostitution. The prostitution dates occurred throughout Northern Virginia. At the completion of each date, the female provided all of the money to the driver.

11. The females were instructed to charge the customers between $30 and $40 for the sexual acts.

12. The females engaged in ten to twenty prostitution dates per day.

13. DURAN MOTA and Bonilla-Hernandez drove the females to various stores in order to purchase condoms for the prostitution dates.

14. At the end of the week on Saturday, DURAN MOTA and Bonilla-Hernandez would provide each female 50% or less of the prostitution earnings. DURAN MOTA and Bonilla-Hernandez would keep the remainder of the prostitution proceeds.

15. The acts taken by DURAN MOTA in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason.

16. In the event that the Court finds that the defendant has breached this Plea Agreement, this Statement of Facts shall be admissible as a knowing and voluntary confession in any proceeding against the defendant regardless of whether the Plea Agreement is presented to or accepted by a Court. Moreover, the defendant waives any rights that the defendant may have under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any such proceeding.

17. This Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not include each and every fact known to the defendant or the government, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: Maureen C. Cain
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Eliazar Duran Mota, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Eliazar Duran Mota

I am Eliazar Duran Mota's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Charles Burnham, Esquire
Attorney for Eliazar Duran Mota